# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

JOE ALTER,

Plaintiff,

> Case: 1:26-cv-01506  JURY DEMAND
> Assigned To : Chutkan, Tanya S.
> Assign. Date : 4/30/2026
> Description: Pro Se Gen. Civ. (F-DECK)

v.

DONALD J. TRUMP,

in his official capacity as President

of the United States,

Defendant.

RECEIVED
Mailroom

APR 3 0 2026

Angela D. Caesar, Clerk of Clerk
U.S. District Court District of Columbia

# COMPLAINT FOR DECLARATORY RELIEF

**Plaintiff Joe Alter, proceeding pro se, alleges as follows:**

INTRODUCTION

1. This is a *non-punitive* action for declaratory relief under 28 U.S.C. 2201, 2202, and 28 U.S.C. 1331.

2. Plaintiff does not *seek* damages, criminal punishment, or coercive removal. Plaintiff seeks a declaration on a structural constitutional question in a posture tailored to Article III: whether a citizen may petition a federal court to declare the constitutional status of a sitting President under Section 3 of the Fourteenth Amendment under the Declaratory Judgement Act, and their 1st Amendment right of petition.

3. Plaintiff previously brought a Section 3 action concerning Defendant's eligibility to hold office. On February 17, 2026, the United States Court of Appeals for the District of Columbia Circuit summarily affirmed dismissal for lack of Article III standing, but modified the dismissal to be without prejudice. That disposition preserved the possibility of a new filing in a materially updated factual posture.

2

4. The factual posture has materially changed.

5. On January 20, 2025, Defendant granted sweeping clemency for January 6 offenders, commuting the sentences of fourteen named defendants and granting a full, complete, and unconditional pardon to all others convicted of January 6-related offenses.

6. Plaintiff still alleges that those pardons and commutations constitute post-insurrection aid or comfort to persons who engaged in conduct supporting the January 6 attack and its objectives.

7. More recently, on April 14, 2026, the Department of Justice asked the D.C. Circuit to vacate the January 6 seditious-conspiracy convictions of Proud Boys and Oath Keepers leaders and dismiss the indictments.

8. Those convictions were among the clearest jury-backed federal adjudications establishing the organized, insurrectionary character of January 6. Plaintiff had relied on such adjudications in prior filings to help make the constitutional character of the event judicially legible.

9. Plaintiff alleges that the Executive's present effort to now vacate and dismiss those convictions is not merely retrospective housekeeping, but current official action that attacks and nullifies the very adjudicated findings that previously helped make the January 6 constitutional rupture legible in federal court. This is manifestly further damage to our constitutional framework, and that system's ability to cope with willful executive disregard of redline constitutional mandates, and limits to its conduct.

10.    The constitutional rupture of January 6 has therefore not receded. It remains active, expanding, and subject to present executive reinforcement and erasure and threatens the republic daily with broad and unchecked misuses of executive power, and willful mischaracterization of constitutional construction.

11.    This action accordingly arises in a materially updated factual posture.

12.    This action is also narrower than the forms of judicial process discussed in *Clinton v. Jones*, the 2000 Office of Legal Counsel memorandum authored by Assistant Attorney General Randolph D. Moss concerning presidential amenability to

4

indictment and criminal prosecution, *Nixon v. Fitzgerald*, *Trump v. United States*, and *Trump v. Anderson*. Those authorities, taken together, address institutional balance, damages immunity, criminal prosecution, or state ballot-access enforcement in coercive or otherwise distinct settings. Plaintiff seeks only declaratory adjudication in federal court against a sitting President.

13.     A judicial declaration in this posture would not punish Defendant, direct Congress, or compel executive action beyond the ordinary legal effect of judicial declaration. It would state the law as to a live constitutional controversy. The claimed injury here is not the absence of political remedies, but the continued absence of judicial declaration on whether Section 3's command applies to present officeholding.

14.     Plaintiff does not ask the Court to administer an election, remove a President, compel impeachment, reopen criminal cases, or supervise the Executive Branch. Plaintiff asks only for the narrow judicial act of saying what the law is as to Section 3 in a

live controversy between a citizen and a sitting President. It is a minimal request for relief.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction under 28 U.S.C. 1331 and 28 U.S.C. 2201-2202.

16.     Venue is proper in this District because Defendant resides here in his official capacity and substantial acts and omissions relevant to this controversy occurred in this District.

## PARTIES

17.     Plaintiff Joe Alter is a citizen of the United States.

18.     Defendant Donald J. Trump is President of the United States and is sued in his official capacity for declaratory relief only.

## NATURE OF RELIEF SOUGHT

19.     Plaintiff does not seek money damages.

6

20.    Plaintiff does not seek criminal sanctions.

21.    Plaintiff does not seek immediate injunctive removal.

22.    Plaintiff seeks only a declaration of constitutional status under Section 3 of the Fourteenth Amendment. At minimum, it comes down to a citizen's right to petition for action or determination, *any at all*, on a live and significant constitutional controversy.

## FACTUAL ALLEGATIONS

23.    On January 6, 2021, the United States Capitol was attacked in an effort to prevent certification of the presidential election.

24.    Plaintiff alleges that Defendant engaged in conduct giving rise to disqualification under Section 3 of the Fourteenth Amendment.

25.    In prior litigation, Plaintiff relied in part on federal adjudications arising from January 6, including jury-backed seditious-conspiracy convictions, as evidence making the constitutional character of the event judicially legible.

7

26.     Since the prior dismissal without prejudice, Defendant has granted broad clemency to January 6 offenders.

27.     Since the prior dismissal without prejudice, the Department of Justice under Defendant's administration has moved to erase the very seditious-conspiracy convictions on which Plaintiff previously relied.

28.     Plaintiff alleges that these official acts deepen the same ongoing injury already pleaded in his earlier case and make the need for declaratory relief more urgent, not less.

29.     Plaintiff alleges that the present executive effort to vacate and dismiss those convictions leaves the Section 3 question not merely unresolved, but actively obscured by current executive action.

30.     Plaintiff does not sue Department officials to challenge prosecutorial discretion in the abstract. Plaintiff alleges present executive action as further evidence that the January 6 constitutional rupture remains active, expanding, and subject to official nullification under Defendant's administration.

31.     Plaintiff has cited, and could again import, numerous examples of present anti-constitutional conduct flowing from the same rupture. Those examples further illustrate the controversy, but they are not necessary to state the core claim here. The core claim is that Defendant's present officeholding remains constitutionally contestable under Section 3, and that current executive action is actively obstructing a judicially legible re-presentation of that question.

## ARTICLE III STANDING IN THIS NON-PUNITIVE DECLARATORY POSTURE

32.     Plaintiff does not invoke Article III to *seek* damages, punishment, or coercive removal.

33.     Plaintiff invokes Article III to seek declaratory adjudication of an ongoing structural constitutional question: whether (or not) Defendant is disqualified from office under Section 3 of the Fourteenth Amendment.

9

34.     The injury alleged here is not ideological disagreement with executive policy. It is the adverse and personal obstruction of Plaintiff's ability to re-bring a without-prejudice declaratory action in a materially updated posture, through present executive action directed at erasing the adjudicated findings that had made the January 6 rupture judicially legible in court. Those findings remain part of the legal and factual record, and the Executive's present effort to vacate and dismiss them bears directly on Defendant's qualification under Section 3 of the Fourteenth Amendment. Plaintiff alleges that this new executive posture is not a neutral policy shift, but a continuation of the same constitutional injury in altered form.

35.     More specifically, the injury alleged here is not merely disagreement with historical events. It is the present obstruction of Plaintiff's ability to refile, in a materially updated factual posture, the same non-punitive action for declaratory adjudication previously dismissed without prejudice, while the Executive actively erases the jury-backed findings that had made the

January 6 rupture judicially legible, despite no material change in the facts those juries heard.

36.    Plaintiff alleges that ordinary tort-style standing doctrine cannot be mechanically applied to foreclose this non-punitive declaratory posture without rendering structural constitutional grievances effectively unreachable in court.

37.    Plaintiff further alleges that the Petition Clause of the First Amendment protects the right to seek redress in court, separate from any entitlement to prevail. Plaintiff invokes that right here not as a guarantee of success, but as protection for bringing this non-punitive petition for declaratory adjudication.

38.    Plaintiff's theory does not require this Court to compel removal, impose punishment, or entertain criminal process against a sitting President. To the contrary, it seeks a narrower form of judicial action: declaratory adjudication only. That posture is consistent with Clinton v. Jones, which rejected categorical presidential insulation from judicial process, and with the 2000 Moss memorandum, which treated even criminal-process

questions as matters of constitutional balance rather than absolute presidential unreadability.

39.     To the extent Nixon v. Fitzgerald is invoked beyond its holding concerning civil damages liability for official acts, any such extension would still arise from the same separation-of-powers cloth and would not justify foreclosing a non-punitive declaratory action of this kind. Fitzgerald addressed damages immunity, not the complete unreadability of presidential constitutional status in a declaratory posture.

40.     Nor does Trump v. United States require dismissal here. That case addressed criminal prosecution and immunity doctrine in a punitive posture. Plaintiff seeks neither criminal prosecution nor punishment. This action therefore presents a narrower and less intrusive posture than the one addressed there, and cannot be dismissed on any theory of absolute presidential unreadability.

41.     Nor does Trump v. Anderson require dismissal here. That case addressed state enforcement of Section 3 against a former President in a ballot-access posture. This case arises in federal court, against a sitting President, in a non-punitive declaratory

posture, where Plaintiff alleges that Defendant is presently exercising the powers of an office he is constitutionally disqualified to hold and is using those powers in ways that make the Section 3 question more, not less, urgent. Section 3 says that a person once bound by oath who then engaged in insurrection or gave aid or comfort shall not hold office, which by its terms speaks to present officeholding no less than candidacy.

42.    Plaintiff's position is that Section 3 did not invent an anti-monarchical principle foreign to the Constitution. The principle was already made plain in the Declaration and in the anti-prerogative structure of the Constitution. Section 3 was adopted to make that principle explicit in constitutional text after the Nation learned, at enormous cost, what follows when oath-bound officers turn against the constitutional order.

43.    Section 3 did not arise in a vacuum. It followed a period in which judicial error, most notoriously Dred Scott, and the Civil War exposed the cost of leaving the anti-prerogative principle insufficiently secured in constitutional text. The Declaration had already made the principle plain. Section 3 was adopted to make it

13

explicit in the Constitution itself: one who once swore to support the Constitution and then engaged in insurrection or gave aid or comfort shall not hold office. Plaintiff alleges that judicial error in the present environment once again necessitates that explicit restatement, now by judicial declaration, for all to hear.

44.     Judge Luttig's recent essay discussing the Declaration's original grievances further underscores the same point: the most serious constitutional grievances are often diffuse by nature. If such grievances are not reachable even in this non-punitive declaratory posture, Plaintiff alleges that the resulting foreclosure is itself difficult to reconcile with the Constitution's structure and the judicial duty to say what the law is.

45.     That injury is concrete in this posture because the Executive's current effort to vacate and dismiss the January 6 seditious-conspiracy convictions confirms that the controversy remains live, active, and institutionally consequential, and because present executive action is directed at the very adjudicated findings on which Plaintiff would rely in refiling his declaratory action.

14

46.     Plaintiff further alleges that Defendant's January 20, 2025 pardons and commutations for January 6 offenders reinforce the same ongoing injury by supplying present executive aid or comfort to persons involved in the underlying insurrectionary conduct.

47.     Since the prior dismissal, the Executive has not merely declined to confront the constitutional rupture of January 6; it has acted affirmatively to reinforce and obscure it. Defendant granted sweeping clemency to January 6 offenders, and the Department of Justice has since moved to vacate and dismiss the very seditious-conspiracy convictions on which Plaintiff previously relied. Those new official acts materially alter the posture of this case and confirm that declaratory relief remains necessary.

48.     To name the Section 3 question directly is relief that reaches everyone, because it reaffirms a first principle of the constitutional order: no person is above the office he claims to hold.

**CAUSATION**

49.     Plaintiff's injury is fairly traceable to Defendant because it arises from Defendant's alleged disqualifying conduct, Defendant's later clemency for January 6 offenders, and the present executive use of official power under Defendant's administration to erase the adjudicated findings on which Plaintiff would otherwise rely in refiling his declaratory action.

50.     Plaintiff does not allege that standing depends on proving Defendant personally issued every downstream instruction. The relevant fact is that the Executive, under Defendant's administration and in service of Defendant's constitutional position, is actively erasing adjudicated January 6 findings central to the controversy.

## REDRESSABILITY

51.     A declaratory judgment would redress Plaintiff's injury by restoring a judicially accessible path to the refiling and adjudication of the constitutional status question now being obstructed by present executive action.

52.     Such relief would not depend on damages or punishment. A declaration that Section 3 does or does not apply would alter the legal and constitutional landscape by resolving a live controversy presently left unread while official acts continue to erase its adjudicative foundations.

53.     Because Plaintiff seeks only declaratory relief, this action presents a less intrusive posture than the forms of judicial process discussed in Clinton v. Jones, the 2000 Moss memorandum, Nixon v. Fitzgerald, Trump v. United States, and Trump v. Anderson, and therefore cannot be dismissed on any theory of absolute presidential unreadability.

## COUNT I

## DECLARATORY JUDGMENT UNDER SECTION 3 OF THE FOURTEENTH AMENDMENT

54.     Plaintiff realleges paragraphs 1 through 51.

17

55.    An actual controversy exists concerning whether Defendant is disqualified from holding office under Section 3 of the Fourteenth Amendment.

56.    That controversy is live and justiciable in this non-punitive posture because Plaintiff seeks only declaratory adjudication, and because ongoing executive action is actively erasing jury-backed January 6 findings that had made the constitutional consequences of the insurrection judicially legible.

57.    Plaintiff alleges that Section 3 is self-executing and that a federal court may declare the constitutional status of a sitting President where the issue is presented in a non-punitive declaratory posture and an actual controversy exists.

58.    Plaintiff further alleges that Defendant's post-January 6 clemency for January 6 offenders constitutes aid or comfort to persons who engaged in insurrectionary conduct and further reinforces the live constitutional character of the controversy.

18

59.      Plaintiff therefore requests a declaration of the parties' rights and legal status under Section 3 of the Fourteenth Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that this action presents a justiciable Article III controversy in a non-punitive declaratory posture;

B. Declare the legal status of Defendant under Section 3 of the Fourteenth Amendment;

C. Grant such further declaratory relief as the Court deems proper; and

D. Grant any other relief consistent with the non-punitive nature of this action.

Dated: 4/29/2026

Respectfully submitted,

JOE ALTER

Plaintiff, Pro Se
1694 Trafalgar Pl
Westlake Village, CA 91361
805-657-2211

joealterinc@gmail.com